## McCarren et al. v. Sim Corp. et al.

*Lawrence M. Silverman*, for plaintiffs.
*Joseph S. Moloznik*, for defendants.

HONEYMAN, *J.*, August 30, 1974—In this case, by reason of alleged fraudulent misrepresentations by defendants to plaintiffs and/or their assignor, assignees of a buyer under an agreement of sale for

a tract of ground seek to compel seller to obtain the necessary permits from the council of the borough in which the major portion of the tract is located for the construction of a 350-unit high-rise apartment complex on the property in question. In the alternative, assignees pray for an abatement of the purchase price to reflect the value of the property for the uses permitted under existing ordinances on the date the agreement of sale was signed. Seller asks this court to dismiss the complaint and seeks to justify the retention of the down money as liquidated damages for plaintiffs' breach.

After three full days of hearings, the chancellor makes the following

## FINDINGS OF FACT

1. Plaintiffs, Charles E. McCarren, Jr. and Irvin Fried, are individuals and residents of this County in Abington and Bala Cynwyd, respectively.

2. Defendant, Sim Corporation (hereinafter "Sim"), is a corporation organized and existing under the laws of this Commonwealth with its principal office in Elkins Park, Montgomery County, Pa.

3. Defendant, Victor Eisenberg, is an individual and resides in Philadelphia.

4. The corporate defendant acquired the property in question (hereinafter "the Crawford Hill tract") in 1966.

5. The individual defendant is president and the majority stockholder in the corporate defendant.

6. On February 10, 1972, plaintiff's assignor, Decker Management and Development Corporation (hereinafter "Decker"), entered into a written agreement to buy, in its own name or that of its

assignee, the Crawford Hill tract located primarily in the Borough of West Conshohocken and secondarily in Lower Merion Township. Seller of the tract was Sim, acting through defendant Eisenberg and the sale price was $800,000, of which $20,000 was paid at the time of the signing of the agreement. Settlement was to be made within 180 days of the date of the agreement, i.e., by August 10, 1972.

7. By the terms of the agreement of sale, in the event of a default by buyer, seller, at its option, could retain the deposit money as liquidated damages.

8. On August 8, 1972, Decker assigned its rights under the agreement of sale in writing to plaintiffs herein.

9. On August 9, 1972, plaintiffs entered into a written amendment to the agreement of sale with defendant Sim. By the terms of this amendment, plaintiffs agreed to deposit an additional $50,000 in return for settlement under the original agreement being extended from August 10, 1972, to November 10, 1972.

10. Plaintiffs did not make settlement (as required by Paragraph 2 of the amendment to the agreement of sale) and defendant Sim retained the deposit moneys of $70,000 as liquidated damages for plaintiffs' default.

11. In December of 1971, defendant Sim and certain officials of the Borough of West Conshohocken (hereinafter "borough"), agreed in writing that the borough would issue a tentative building permit to Sim for apartment development of 350 units and Sim agreed to tie into the public sewage disposal system when it became available, and that, in the meanwhile the borough agreed to permit the erection of an on-site sewage disposal sys-

tem to service 350 units subject to approval by the Pennsylvania Department of Health. The entire borough council, by resolution dated February 8, 1972, ratified this agreement, which also resolved completely all matters in litigation and dispute between the borough and Sim.

12. At the time of this agreement between the borough and Sim, Ordinance No. 272 of the Borough of West Conshohocken amending the Building Code of the Borough of West Conshohocken was in existence. This ordinance established a height limitation of 40 feet for buildings in the borough. West Conshohocken had no zoning ordinance. The ratification of the agreement with Sim clearly constituted a grant of a variance from the impact of the ordinance on the project, or a commitment to repeal the ordinance.

13. In the January 1972 issue of Philadelphia Magazine, the following advertisement appeared:

"Philadelphia's Main Line
Is Ready for a Developer.
"In Villanova East . . . high in a lush green hill . . . are nine acres with sewage and building permits for an apartment complex up to 350 units. Twenty minutes to center city via the Schuylkill Expressway. All utilities underground. Interested. Write.
The Sim Corporation
1300 Arch St.
Phila., Penna. 19107. "

This advertisement was inserted by defendant Eisenberg and the land which was the subject of the advertisement was the West Conshohocken portion of the subject tract.

14. In late January of 1972, plaintiff's assignor, Decker, visited the offices of Norman Rice, ar-

chitect for Sim in the development of the Crawford Hill tract. Decker examined diagrams, models and blueprints that the architect had made with respect to the prospective development of a project on the Crawford Hill tract. Prior to this visit, architect Rice had spoken with the borough solicitor concerning the borough building code and the 40-foot height limitation therein, with counsel for Sim, as a result of which Mr. Rice concluded the height limitation ordinance no longer would constitute an obstacle.

15. Following the execution of the original agreement of sale, Sim expended an additional sum of $84,000 on the tract for removal and replacement of curbing, new water culverts, extension of storm water drains and street paving.

16. Any oral representations by Eisenberg to Martin Decker (a substantial participant in the Decker corporation) alleged to have been made in April or May 1972, concerning the utilities upon or servicing the tract post-dated the agreement and would be immaterial to the issues herein. Furthermore, there was no corroborating evidence concerning these alleged representations.

17. Eisenberg made no fraudulent representations to either of plaintiffs.

18. At the time the parties entered into the amendment to the agreement of sale on August 9, 1972, neither plaintiffs, nor anyone on behalf of assignor, including Martin Decker, made any complaint concerning fraudulent misrepresentations nor was there any contention by, or on behalf of, plaintiffs that the entry into the original agreement of sale was fraudulently induced by defendants.

19. Neither plaintiffs nor their assignor made application for building permits pertaining to the

subject tract before November 10, 1972, the extended date for final settlement, nor did they pursue any financing arrangements with regard to the proposed multi-unit project. There was no responsibility upon defendants to pursue the finalization of plaintiffs' plans.

20. The Philadelphia Suburban Water Company was prepared to provide the underground water service requisite to supply 350 dwelling units.

21. There was no evidence whatsoever concerning inadequacy of sewer service or electrical service, or whether they were underground or above ground.

22. The evidence as to any alleged fraud in the inducement or fraudulent misrepresentations chargeable to defendants fell woefully short of the burden of proof imposed upon one who asserts fraud.

23. Plaintiffs breached the agreement of sale as amended by their failure to complete settlement in accordance with the terms thereunder.

## DISCUSSION

Plaintiffs seek to establish their right to prevail in this case by showing that they relied upon fraudulent misrepresentations made to them by defendants in the form of: (a) the advertisement in Philadelphia Magazine; (b) visual and schematic representations; and (c) oral statements by Eisenberg.

The chancellor initially notes that the only issue in this case is whether plaintiff's allegations of fraud are supported by evidence which is clear, precise, direct and convincing, and, if so, did plaintiffs justifiably rely upon the allegedly fraudulent

misrepresentations. See Copes v. Williams, 412 Pa. 452 (1963); Neuman v. Corn Exchange National Bank and Trust Company, 356 Pa. 442 (1947). Plaintiffs allege that the fraudulent misrepresentations were made in the areas of zoning, sewer permits, water lines, roads and streets and electrical power.

Plaintiffs first contend that the advertisement in Philadelphia Magazine contained fraudulent misrepresentations by defendant. There could be no fraud in the area of sewer permits, since plaintiffs' counsel stipulated at trial that all allegations of fraud referring to sewer permits were withdrawn. The advertisement contains nothing as to roads and streets, but does mention "all utilities underground" thereby covering the areas of water lines and electrical power. There was no evidence adduced at trial to establish that the water lines or electrical power were not underground or that plaintiffs' assignor or plaintiffs justifiably relied on that segment of the advertisement. In addition, the only part of the advertisement that could conceivably relate to zoning was ". . . building permits for an apartment complex up to 350 units." This segment more properly refers to the building code and was in line with the borough's agreement to grant Sim the tentative building permit and, therefore, was not fraudulent.

Plaintiffs next contend that the visual and schematic representations made and displayed to Decker at Rice's office reaffirmed the fraudulent misrepresentations made by the advertisement. The chancellor is at a loss to understand how any of the visual or schematic representations identified as exhibits at trial were in any way fraudulent.

Plaintiffs' final contention is that certain alleged oral statements made by defendants were fraudulent. The chancellor notes that defendant Eisenberg vigorously denied making any statements to plaintiffs or their assignor, Decker, which could in any way be fraudulent. In addition, defendants' attorney, Warren S. Spalding, Esq., stated that there were no representations made by defendants to plaintiffs or to their assignor, Decker, either at the time of the signing of the agreement of sale or the amendment thereto. This testimony was not contradicted. The alleged statements complained of were (1) the project "is ready to go forward"; (2) the project "was practically ready for construction"; (3) the project had "sufficient" electricity and water. Even if the chancellor were to view the above statements in a vacuum unchallenged by defendants' vigorous denials, the statements do not rise to the level of the clear and convincing evidence needed in this type of case to establish fraud. Even if they should, and would be found material, despite the fact they allegedly were uttered after the agreement was entered into, the chancellor still fails to see how Martin Decker or his assignees, all of whom are experienced and sophisticated businessmen in the field of land development, could have justifiably relied thereon.

## CONCLUSIONS OF LAW

1. The advertisement placed in Philadelphia Magazine by defendant Eisenberg was not fraudulent to either plaintiffs or their assignor.

2. None of the visual or schematic representations identified as exhibits in this case were fraudulent to either plaintiffs or their assignor.

3. The alleged oral statements made by defendants to plaintiffs as their assignor were not fraudulent, if uttered were immaterial, and could not have been justifiably relied upon by plaintiffs or their assignor.

4. Defendants are under no obligation to obtain the necessary permits for any construction on the Crawford Hill tract.

5. Defendants are under no obligation to accept any abatement in the purchase price of the Crawford Hill tract.

6. Plaintiffs, by failing to fulfill the terms of the agreement of sale, as amended, breached this contract, by reason of which defendants were justified in retention of the deposit money as liquidated damages.

## DECREE NISI

And now, August 30, 1974, it is decreed that: (a) plaintiffs' complaint be, and hereby is dismissed; (b) the lis pendens be stricken from the record; (c) costs are imposed on plaintiffs; (d) this decree shall become the final judgment of this court unless exceptions are filed hereto within 20 days.